# In the United States Court of Federal Claims

No.  12-320C
(Filed:  August 5, 2014)
**\*Opinion originally filed under seal on July 24, 2014**

| | |
|---|---|
| LAWRENCE BATTELLE, INC.,  )  et al.,  )   )  Plaintiffs,  )   )  v.  )   )  THE UNITED STATES,  )   )  Defendant.  )   )  | **Bid protest; dismissal of non-protest claims sounding in tort, implied contract, and based on the Administrative Procedure Act; judgment for government on the administrative record; elimination from the competitive range justified** |

*John M. Loconsolo,* Enfield, CT, for plaintiff.

*Katy M. Bartelma*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, and *Robert E. Kirschman, Jr.*, Director, Commercial Litigation Branch, for defendant.

# O P I N I O N

**FIRESTONE**, *Judge*.

Plaintiff, Lawrence Battelle, Inc. ("LBI"), filed the present action in May 2012, in which it raised various claims in connection with a contract for specialized cost services by the United States Air Force ("Air Force").[1]  Pending before the court is the United

---

[1] This action was filed nine months after the August 11, 2011 contract award.  Because plaintiff initially filed this action pro se, the court stayed proceedings through June 22, 2012 to allow plaintiff to obtain counsel.  After obtaining counsel, plaintiff requested—and was granted—leave to amend its complaint, and several extensions of time to permit full briefing on the dispositive motions.  Thereafter, prosecution of the case was further delayed by the death of plaintiff's original counsel, which required that a new attorney be brought in to handle the case.  See Order

States' ("the government") motion to dismiss certain portions of the case pursuant to

Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for

lack of jurisdiction.  The government also has moved for judgment upon the

administrative record under RCFC 52.1.  LBI has filed a cross-motion for judgment on

the administrative record.  For the reasons discussed below, the government's motion to

dismiss and for judgment on the administrative record is **GRANTED**.  Plaintiff's cross-

motion for judgment on the administrative record is **DENIED**.

## I.    STATEMENT OF FACTS[2]

### a.  The solicitation

The contracting program at issue in this case is known as Specialized Cost

Services IV ("SCS IV").  It includes requirements for cost estimating and analysis to be

provided to various Air Force bases over a period of five years pursuant to task orders.

The Air Force issued the specialized cost services solicitation, Request for Proposals

("RFP") FA8721-10-R-0001, on September 10, 2010 ("the solicitation").  AR Tab 12 at

201.  In May 2010—prior to issuing the solicitation—the Air Force designated SCS IV as

a Small Business set-aside.  AR Tab 7 at 110.  The Air Force selected North American

Industry Classification System ("NAICS") 541712 (Research and Development in the

Physical, Engineering, and Life Sciences) as the appropriate small business designation.

---

Staying Case, ECF No. 60.  Briefing was not complete until April 18, 2014, and oral argument
was held on June 13, 2014.

[2] The facts are taken from the administrative record ("AR").

The Air Force indicated that it would accept offers from companies in that NAICS code with up to 1,500 employees.[3]  According to the statement of work, the procurement was intended to provide the Air Force with cost estimating and/or advisory and assistance services through the award of multiple, indefinite delivery-indefinite quantity ("ID-IQ") contracts against which task orders would be issued.  AR Tab 12 at 205-06.  Under the terms of the solicitation, the government stated that "[It] intends to award up to three [ID-IQ] contracts in response to this solicitation; however, the Government reserves the right to make more, less, or no award at all."  AR Tab 14 at 394.

Each offeror was required to submit a technical proposal, cost/price information, past performance information, and contract documentation.  Id. at 372; AR Tab 16 at 990.  The procurement decision was to be made on a best value basis, permitting performance-price tradeoff in reaching the award decision.  AR Tab 14 at 394.  Technical proposals would be rated as "acceptable," "reasonably susceptible of being made acceptable," or "unacceptable."  Id. at 395.  The solicitation specified that proposals would "initially" be evaluated for technical acceptability based upon two technical subfactors.  Id. at 395.  Next, all "technically acceptable" and "reasonably susceptible of being made acceptable" offers would be ranked by price and evaluated.  Id. at 397.  Finally, a performance quality assessment would be performed.  Id. at 399.

---

[3] Ordinarily, NAICS code 541712 carries a 500-employee limit.  The Air Force extended that limit under an exception provided for in the standard.  See AR Tab 14 at 370.

### b.  The evaluation

LBI submitted a proposal on October 20, 2010.  <u>See</u> AR Tab 18.  The Air Force received two other proposals: one from Tecolote Research, Inc. ("Tecolote"), the other from [. . .].  AR Tab 15 (Tecolote); AR Tab 19 [. . .].  In late October 2010, the contracting officer sent a letter to each offeror requesting that each provide contact information for the prime contractors for whom it, or one of its subcontracting partners, had reported working as a subcontractor.  <u>See</u> AR Tabs 20-26.  On November 28, 2010, LBI sent the Air Force a letter containing prime contractor contact information for the past performance evaluation.  AR Tab 55 at 3699-700.  In its letter, LBI stated—as it had in a prior letter to the contracting officer—that there would be organizational conflicts of interest under FAR 3.101-1[4] if LBI were evaluated by a former contracting partner that was also bidding on SCS IV.  AR Tab 55 at 3700.

---

[4] FAR 3.101 governs standards of conduct related to business practices and conflicts of interest. FAR 3.101-1 provides:

> Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none.  Transactions relating to the expenditure of public funds require the highest degree of public trust and an impeccable standard of conduct.  The general rule is to avoid strictly any conflict of interest or even the appearance of a conflict of interest in Government-contractor relationships. While many Federal laws and regulations place restrictions on the actions of Government personnel, their official conduct must, in addition, be such that they would have no reluctance to make a full public disclosure of their actions.

48 C.F.R. § 3.101–1.

Following initial evaluations, the Source Selection Evaluation Team ("SSET") proposed giving LBI an "unacceptable" rating on its technical proposal.[5]  On January 5, 2011, the SSET presented its initial evaluation results to the Source Selection Authority ("SSA") at the competitive range briefing.  See AR Tab 27 at 1620-22.  The evaluation team reported to the SSA that LBI had received an "unacceptable" technical rating.  Id. at 1634, 1651, 1657.  The SSA also reported that LBI's cost proposal was over the government estimate.  The evaluation team proposed giving LBI a neutral rating on past performance.[6]

With regard to LBI's technical rating, several major problems were identified, including: LBI's failure to substantiate its staffing approach or explain how, as the prime contractor, it could incur at least 50 percent of the cost of the contract as required by FAR 52.219.14.  AR Tab 31 at 1776.  The SSA also noted that LBI had failed to show that its personnel possessed the required certifications to perform the work required.  See id. at 1780.  The SSA based the final unacceptable rating on these problems as identified by the evaluation team.  The detailed Technical Acceptability Summary, AR Tab 27 at 1653-57, explains with regard to Factor 1, Subfactor 1—Program and Personnel Management— that LBI had failed to address and adequately substantiate its "ability to maintain a continuity of services; minimize or eliminate potential disruptions; plan for contingencies

---

[5] Neither Tecolote nor [. . .] received an "unacceptable" rating under either technical subfactors. AR Tab 50 at 2650-51; AR Tab 51 at 2710-11.

[6] LBI was given a neutral "unknown" rating for past performance.  AR Tab 14 at 403. "Unknown" was defined to mean that "no performance record is identifiable or the offeror's performance record is so limited that no confidence assessment rating can be reasonably assigned."  AR Tab 27 at 1704.

and risk mitigation; and staff resources in order to transition." AR Tab 27 at 1653. LBI

was also cited for failing to demonstrate a training plan to prepare personnel for

certification. Id. at 1654. With regard to Subfactor 2—Technical Capability—evaluators

concluded, among other things, that LBI's proposal "did not demonstrate a clear

understanding of all . . . requirements and the ability to fulfill those requirements . . . ."

Id. at 1655.

      Thereafter, on January 14, 2011, the contracting officer notified LBI that it had

been eliminated from the competitive range. See AR Tabs 28, 31. Although the Air

Force sent Evaluation Notices ("ENs")[7] to LBI detailing LBI's deficiencies, the Air Force

told LBI that it would not have an opportunity to respond to those deficiencies because it

had been eliminated from the competitive range. LBI received four ENs under the

Technical Subfactor 1 for Program and Personnel Management. LBI also received five

ENs under the Technical Subfactor 2 for Technical Capability.[8] AR Tab 27 at 1652; AR

---

[7] The Air Force apparently sent two sets of ENs to LBI on January 14, 2011. One set was sent by email, AR Tab 31, and the others by mail, AR Tab 53.22. It is not disputed that there are some differences in the numbering and language of the ENs, however most are virtually identical. For example, the agency emailed LBI an EN, numbered C-T018, that appears to be a slightly different version of an EN that had been sent by mail and numbered C-T005. Compare AR Tab 31 at 1774 (EN numbered C-T018 stating "Your proposal did not demonstrate a clear understanding of all CN requirements and the ability to fulfill those requirements beyond IBR and EVM. Please elaborate on your understanding and abilities for other technical requirements") with AR Tab 53.22 at 3650 (EN numbered C-T005 stating "Your proposal did not demonstrate a clear understanding of all CN requirements and the ability to fulfill those requirements other than IBR and EVM. Please demonstrate your understanding and ability to fulfill technical requirements").

[8] For comparison, Tecolote received a technical rating of "acceptable" with no ENs under either technical subfactor, AR Tab 27 at 1640, and [. . .] received a technical rating of "reasonably susceptible to being made acceptable," with one EN under each subfactor. Id. at 1644-45.

Tab 31.  With regard to the cost/price factor, LBI received nine more ENs.  Apparently, LBI's price was over the government estimate and the highest-priced offer.  AR Tab 27 at 1669.

LBI requested, and received, a debriefing.  See AR Tab 53.23; AR Tab 56 at 3703. The Air Force subsequently awarded the contract to Tecolote on August 10, 2011.  AR Tab 40.

### c.  History of proceedings

On January 31, 2011, LBI filed a pre-award protest before the Government Accountability Office ("GAO").  See AR Tab 56 at 3701.  LBI challenged its elimination from the competitive range.  LBI argued that the Air Force had "used unstated evaluation criteria and misstated facts" when it gave LBI certain "unacceptable" ratings under the technical factor.  AR Tab 56 at 3703-04.  LBI also argued that the Air Force's past performance rating based on prime contractor feedback was irrational and not in accord with the solicitation.  Id.  Finally, LBI argued that the Air Force's evaluation of cost/price was "unfounded."  Id.  The GAO denied LBI's protest on May 11, 2011, finding that the "agency properly evaluated [LBI's] proposal as unacceptable under the technical evaluation factor" and that, consequently, it was unnecessary to reach any of LBI's "challenges to the past performance and cost aspects of the evaluation."  Lawrence Battelle, Inc., B-404775, 2011 WL 1833935, at *6 (Comp. Gen. May 11, 2011).

On May 17, 2012, more than a year after the GAO decision was issued and nine months after the contract was awarded, the individual officers of LBI filed a pro se complaint in this court challenging the contract award.  On May 18, 2012 and May 31,

2012, this court ordered LBI to obtain counsel. See Order, ECF No. 8. On June 26,

2012, LBI's counsel filed an entry of appearance with the court. ECF No. 9. On

November 14, 2012, LBI filed, through counsel and with leave of the court, its amended

complaint, in which LBI challenged the Air Force's procurement of specialized cost

services, but also raising claims for fraud and discriminatory treatment in violation of 42

U.S.C. § 1983, as well as for $3,685,000 in damages. The complaint also includes claims

under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, in connection with the

actions of the Air Force and for breach of an implied-in-fact contract stemming from the

Air Force's alleged failure to consider LBI's proposal in good faith. In addition to

damages, plaintiff seeks injunctive and declaratory relief as well as attorney fees.

## II.    DISCUSSION

### a.  LBI's non-bid protest claims must be dismissed

The United States Court of Federal Claims is a court of limited jurisdiction.

Marcum LLP v. United States, 753 F.3d 1380, 1382 (Fed. Cir. 2014). The Tucker Act,

28 U.S.C. § 1491, provides the court with jurisdiction to "render judgment upon any

claim against the United States founded either upon the Constitution, or any Act of

Congress or any regulation of an executive department, or upon any express or implied

contract with the United States, or for liquidated or unliquidated damages in cases not

sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act also provides the court with

its jurisdiction to hear bid protests, and the court is empowered to hear an action "by an

interested party objecting to a solicitation by a Federal agency for bids or proposals for a

proposed contract or to a proposed award or the award of a contract or any alleged

violation of statute or regulation in connection with a procurement or a proposed
procurement." 28 U.S.C. § 1491(b)(1).  In order to survive a motion to dismiss for lack
of subject matter jurisdiction, the non-moving party must demonstrate that the complaint
raises a non-frivolous claim within the court's jurisdiction.  See Moden v. United States,
404 F.3d 1335, 1341 (Fed. Cir. 2005).

The government argues that this court does not have jurisdiction over plaintiff's
claims alleging violations of 42 U.S.C. § 1983.  LBI agrees with the government that this
court does not have jurisdiction to hear cases under 42 U.S.C. § 1983.  Those claims will
be dismissed.

The government also argues that this court does not have jurisdiction over LBI's
claims for fraud, discrimination, and for failing to "treat Plaintiff's proposal fairly," or
over LBI's claims "premised on intentional and/or negligent misconduct."  The
government argues these claims sound in tort and must be dismissed.  The court agrees.
This court does not have jurisdiction over claims sounding in tort.  See 28 U.S.C. §
1491(a)(1) (Court of Federal Claims has jurisdiction over enumerated claims "not
sounding in tort"), Jentoft v. United States, 450 F.3d 1342, 1349-50 (Fed. Cir. 2006)
(claims of tortious nature not actionable in Court of Federal Claims).  Therefore,
plaintiff's claims sounding in tort will also be dismissed.

The government finally argues that this court lacks jurisdiction over LBI's
implied-in-fact contract claim and the claim for relief under the APA.  Specifically, the
government argues that although this court reviews bid protest cases based on the
standards established under the APA, the court does not itself have jurisdiction to

9

consider challenges to agency action under the APA.  The government is correct.  It is
well-settled that this court does not have jurisdiction to hear cases under the APA.
<u>Martinez v. United States</u>, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc).  Thus,
plaintiff's APA claims must be dismissed.  In addition, the court agrees with the
government that plaintiff's challenges to the fairness of the Air Force's evaluation of its
proposal are not properly reviewed on an implied-in-fact contract theory, to the extent
that the claims are covered under § 1491(b).  The Federal Circuit explained in <u>Res.
Conservation Grp., LLC v. United States</u> that whether an agency fairly considered a
proposal should be reviewed on the administrative record under § 1491(b).  597 F.3d
1238, 1242-43 (Fed. Cir. 2010) (Congress "directed the court to use the standards of
review provided by the APA in reviewing the bid protest suits").  Therefore, plaintiff's
claims for breach of implied contract will be dismissed.  The court now turns to the
parties' cross-motions for judgment on the administrative record.

### b.  The government is entitled to judgment on the administrative record

The scope and standard of review of LBI's and the government's cross-motions
for judgment on the administrative record are well-settled.  Pursuant to RCFC 52.1, the
focal point of judicial review of an agency's procurement decision is on the already-
existing administrative record.  <u>Florida Power & Light v. Lorion</u>, 470 U.S. 729, 743
(1985) (stating "the focal point for judicial review should be the administrative record
already in existence, not some record made initially in the reviewing court") (citations
omitted).  The proper standard for a motion for judgment upon the administrative record
is whether, given all the disputed and undisputed facts, a party has met its burden of proof

based on the evidence in the record.  See Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005).

As noted above, in reviewing the procurement decision, the court applies the standards set out in the APA.  28 U.S.C. § 1491(b)(4); Bannum, 404 F.3d at 1351.  The proper inquiry is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Id. (citing 5 U.S.C. § 706(2)(A)).  Application of the arbitrary and capricious standard is "highly deferential."  Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  "This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."  Id. (citation omitted).  The court is permitted to set aside a decision only if "(1) the procurement official's decision lacked a rational basis, or (2) the procurement procedure involved a violation of regulation or procedure."  Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001).  In this connection, the agency's decision is entitled to a "presumption of regularity."  Citizens to Preserve. Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971) (citations omitted), abrogated in part by Califano v. Sanders, 430 U.S. 99, 105 (1977).  Thus, the disappointed bidder "bears a heavy burden."  Impresa, 238 F.3d at 1333 (citations omitted).

Further, in bid protest cases, the "protester must show not only a significant error in the procurement process, but also that the error prejudiced [the protestor]."  Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996).  Specifically, in addition to its heavy burden of demonstrating that the agency's actions were arbitrary, capricious, or not

in accordance with the law, a protestor must further demonstrate that it was "significantly prejudiced" by the agency's error.  <u>Bannum</u>, 404 F.3d at 1353 (citations omitted).  That is, the protestor must show that "there was a substantial chance it would have received the contract award but for the error[.]"  <u>Id.</u>

> **i.  The Air Force's technical evaluation and competitive range determination were rational and made in accordance with the law**

LBI complains that the award must be set aside because LBI was never given an opportunity to correct the deficiencies identified in the ENs, and thus was improperly eliminated from the competition.  LBI argues that the decision to eliminate LBI from the competitive range was also not made in good faith because the other offerors were given an opportunity to address the deficiencies in their proposals.

The government argues that the Air Force was permitted to eliminate LBI from the competitive range without allowing LBI to revise its proposal because the Air Force elected not to hold discussions or allow any offeror to correct proposals before making the competitive range decision.  Accordingly, the government argues that all offerors were treated the same.  The government further argues that the Air Force was not legally required to give LBI an opportunity to revise its proposal before excluding its proposal from the competitive range based on a technical "unacceptable" rating.  The government contends that agencies have broad discretion in establishing the competitive range and that the Air Force reasonably exercised its discretion when it eliminated LBI from the competitive range in light of the numerous and largely uncontested flaws found in the technical acceptability of LBI's proposal.

The court agrees with the government that where, as here, the solicitation provided that offerors failing to receive an acceptable rating on the technical proposal would be eliminated from the competition, and the record demonstrates that LBI received an unacceptable rating on its technical proposal; the Air Force was not arbitrary or capricious when it eliminated LBI from the competitive range. The only question is whether the Air Force violated the law when it failed to allow LBI the opportunity to address the deficiencies identified in the ENs that LBI received with regard to technical acceptability.

Under FAR 15.306(c), the competitive range is defined as the group of offerors with whom the source selection official will conduct discussions and from whom the agency will seek revised proposals. There is nothing in FAR 15.306 that authorizes the agency to conduct discussions with offerors who are not included in the competitive range. In this regard, LBI mischaracterizes the facts by suggesting that the two other offerors were given a chance to address the deficiencies in their proposals while LBI was not. Those offerors were given the opportunity to address deficiencies only after they were selected for inclusion in the competitive range. LBI was eliminated from the competition before any offeror was allowed to respond to the deficiency notices they received. Therefore, the Air Force did not violate any regulation by electing not to enter into discussions with LBI or allowing LBI to address the deficiencies identified in its ENs before the competitive range was set. The decision to eliminate LBI from the competitive range was not arbitrary, capricious or otherwise not accordance with law and

13

therefore must be upheld.[9]

## ii. The Air Force's past performance evaluation of LBI was not prejudicial and did not violate any law

Having concluded that LBI's elimination from the competitive range was lawful

and thus LBI was not eligible for award, none of LBI's objections to the way the Air

Force handled LBI's past performance rating were prejudicial because LBI was not

eligible for award of the contract.[10]   G4S Tech. CW LLC v. United States, 109 Fed. Cl.

---

[9] In its response brief, LBI argues—for the first time—that the evaluation of its proposal and elimination from the competitive range was arbitrary and capricious because the "Air Force's handling of the EN process demonstrates extreme negligence." Pl.'s Resp. & Cross-Mot. 20. LBI argues that that one set of ENs contains gaps in the sequence, and that the ENs it received by email, AR Tab 31, are different from those sent by mail and contained in another section of the Administrative Record, AR Tab 53.22. LBI suggests that these discrepancies undermine the decision to eliminate LBI from the competition.

The government argues in response that LBI waived any arguments regarding the ENs by failing to raise its objections in its opening motion, citing SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319 (Fed. Cir. 2006). On the merits, the government argues that any "gaps in the sequence" of control numbers on the ENs, while not explained by the record, are of no moment because LBI received both sets of ENs and the substance of the deficiencies were the same. Accordingly, the government concludes LBI has not shown how it was prejudiced by any sequence gaps or by slight differences in the descriptions of the deficiencies.

The court has reviewed LBI's objections and finds that LBI failed to raise these objections in its opening brief and therefore has waived these arguments. Id. ("arguments not raised in the opening brief are waived."). Moreover, the argument is without merit. The fact that the Air Force was not as careful as it should have been in preparing the first set of ENs it emailed to LBI has no legal significance, and the ENs were, in fact, virtually identical. See note 7. Also, LBI has failed to show how the Air Force's substantive evaluation of LBI's technical proposal was arbitrary or capricious. Having failed to show how the Air Force's evaluation of plaintiff's technical proposal was irrational, the court must affirm both the Air Force's technical rating and its decision to eliminate LBI from the competitive range.

[10] It is for this reason that plaintiff's various arguments regarding the fairness of this contracting process to LBI as a small business do not change the outcome of this protest. Having failed to submit an "acceptable" technical proposal or challenge the government's technical evaluation, none of plaintiff's process concerns are legally relevant. Put another way, because the technical proposal was not given a high enough rating, plaintiff has not been prejudiced by possible other errors in the government's evaluation of its proposal.

708, 725 (2013) (bidder that was properly removed from competitive range had no chance of award and thus could not establish prejudice).  In addition, none of LBI's objections regarding the past performance rating process have merit.  LBI argues that the Air Force's request for prime contractor points of contact (or, more accurately, the Air Force's subsequent requests for performance assessments from those prime contractors) violated 10 U.S.C. § 2305(b)(6)(D) and FAR 15.505.  The government argues that this argument was waived because this process was set forth in the solicitation and LBI failed to timely object to the process, citing Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

The court agrees that LBI's argument regarding the rating process was waived under Blue & Gold Fleet, L.P., 492 F.3d at 1313.  ("[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action[.]").  Because LBI knew that it would need to submit points of contact that could have revealed its identity to other contractors also competing for award, it needed to object to that aspect of the performance review process before submitting a bid.

### iii.   LBI's argument regarding the NAICS Code has been waived

LBI argues—for the first time—in its responsive brief that the Air Force "fail[ed] to apply the proper employee size standard for the small business set-aside . . . " and also "applied the wrong [NAICS] code based on the support to be provided[.]"  Pl.'s Resp. & Cross-Mot. 10-11.  The government argues that even assuming LBI can show prejudice

with regard to the NAICS Code, plaintiff's argument has been waived under a variety of theories.  The court agrees with the government for the reasons set forth below.

To begin, this court agrees that LBI cannot show prejudice because it was eliminated from the competition.  Moreover, LBI's argument fails on the merits.  The court does not have jurisdiction to review the NAICS code designation because LBI failed to comply with the specific procedures for challenging a NAICS code or size standard designation.  See 13 C.F.R. § 121.1103; Ceres Envtl. Servs., Inc. v. United States, 52 Fed. Cl. 23, 33 (2002).  By regulation, "the contracting officer's determination of the applicable NAICS code is final unless . . . [an appeal is] served and filed within 10 calendar days after the issuance of the solicitation or amendment affecting the NAICS code or size standard."  13 C.F.R. § 121.1103(b)(1).  In this case, LBI did not timely appeal the NAICS code assignment to the SBA-OHA.  Because LBI failed to appeal the NAICS code or size standard to SBA within the time allotted, it may not seek review of the NAICS code or size determination in this proceeding.  See 13 C.F.R. § 121.1102; Rotech Healthcare Inc. v. United States, 71 Fed. Cl. 393, 407 (2006) (challenge to agency's assignment of NAICS code to the SBA "is an administrative remedy which must be exhausted before judicial review of a code designation is permitted").  LBI's challenge to the NAICS code is also barred by Blue & Gold Fleet, L.P., 492 F.3d at 1313.  The solicitation clearly identified the NAICS Code, and LBI failed to timely object.  Accordingly, LBI is not entitled to relief in connection with this claim.[11]

---

[11] Plaintiff urges this court to exercise its "equitable" jurisdiction to address the agency's change in the NAICS code from prior SCS contracts.  This court does not have authority to ignore the

### iv. LBI's argument regarding the DCAA audit does not alter the outcome of the technical rating

LBI contends—also for the first time—in its responsive brief that the Air Force failed to properly acknowledge that LBI had a DCAA audit and thus one of the purported errors in its technical evaluation was wrong. The government argues, as it did with several preceding arguments, that LBI's failure to raise this argument in its opening brief should constitute a waiver of the argument. SmithKline Beecham Corp., 439 F.3d at 1319; Cal. Indus. Facilities Res., Inc. v. United States, 104 Fed. Cl. 589, 594 n.7 (2012). In addition, the government contends that the argument lacks merit because the alleged error was not made in connection with the technical evaluation.

LBI argues that a requirement from the "Cost/Price Volume" section of the source selection plan provided that each offeror needed to provide an "audit report, finding, or letter" demonstrating that the offeror's accounting system had been approved and/or was adequate for cost reimbursement contracts in accordance with FAR 9.105-1. AR Tab 11 at 136. FAR 9.105-1, in turn, addresses the procedures the contracting officer must follow before making a responsibility determination. FAR 9.100; FAR 9.105-1. LBI appears to complain that the DCAA audit results would have provided information that would have satisfied the Air Force's concerns identified in four ENs. See Pl.'s Resp. 26-

---

process set forth in the regulations for challenging NAICS code designations. In this connection, plaintiff's contention that it can now raise its objection under FAR 19.302(d)(3), is without merit. As discussed in the government's response brief, protests under FAR 19.302(d)(3) apply only to particular contracts awarded by the General Services Administration and the Department of Veterans Affairs, which are not at issue in this case.

27 (citing AR Tab 31 at 1767, 1768, 1776, 1783).  The government argues that LBI's

contention is flawed because LBI has conflated the technical evaluation with the

responsibility determination.  Specifically, the government argues that while the DCAA

audit would have been considered as part of a responsibility determination at the time of

award or the cost/price evaluation, the Air Force had no obligation to consider the audit

when evaluating the technical merit of LBI's proposal.  In addition, the government

argues that the DCAA audit in question dealt only with the adequacy of LBI's accounting

systems and had no bearing on whether LBI's technical proposal was in any way

sufficient.

  The court again agrees with the government that this argument was waived

because it did not appear in LBI's opening brief and is otherwise without merit.  The

agency would not have reviewed the DCAA audit submitted in connection with LBI's

cost proposal to determine the adequacy of LBI's technical proposal.  Moreover, as the

government contends, the DCAA audit dealt only with the adequacy of LBI's accounting

systems and was not relevant to the technical evaluation.  In such circumstances, the

DCAA audit, even if considered, would not have led to any change in LBI's technical

rating.

## III. CONCLUSION

  For the above reasons, the United States' motion to dismiss and for judgment upon

the administrative record is **GRANTED** and plaintiff's motion for judgment upon the

administrative record is **DENIED**.

  **IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge